IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 10-CR-30010 |
| MARGARITO SAUCEDO, | ) ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This cause comes before the Court on Defendant Margarito Saucedo's Motion to Suppress (d/e 31). The motion is fully briefed, and pursuant to Local Rule 72.1, and the Standing Order of August 2, 2010, the motion has been referred to me for an evidentiary hearing and Report and Recommendation. An evidentiary hearing was held on October 27, 2010. Illinois State Trooper Nathan Miller was the primary fact witness at the evidentiary hearing. The Defendant did not testify. After carefully considering all of the submissions of the parties, hearing evidence on the matter, and pursuant to 28 U.S.C. § 636(b)(1)(B), IT IS RECOMMENDED that the Motion to Suppress be DENIED.

I. BACKGROUND[1]

On January 11, 2010, at approximately 10:31 a.m., Defendant Saucedo was driving a 2005 Peterbilt tractor-trailer truck north on Interstate 55 (I-55) in Logan County, Illinois.  Trooper Miller was patrolling that section of I-55 at the time in a marked squad car.  Trooper Miller's patrol car was equipped with an audio-video recording system.  The microphone was on Trooper Miller's person.  The cameras were located in the vehicle.  Trooper Miller noticed that the Saucedo's trailer had an expired temporary paper plate.  He drove up next to the truck cab to check the United States Department of Transportation (DOT) number.  He ran the DOT number through the computer in his vehicle and determined that the number was new and was not in his system.  He then pulled Saucedo over to issue a citation for the expired plate on the trailer and to conduct a motor carrier inspection.  Trooper Miller was certified to conduct such inspections.  The recording system was activated when Miller turned on his flashing lights.  Saucedo pulled the tractor-trailer off to the shoulder of the Interstate and stopped.

---

[1]This Report and Recommendation is prepared without the benefit of a transcript.

Trooper Miller parked behind the truck on the shoulder of the interstate and walked to the cab. Saucedo was in the driver's seat and Sauceto's cousin, Nancy Saucedo-Castillo, was in the passenger seat of the cab. Trooper Miller asked Saucedo for his driver's license, his log books, and the documentation for his current load. Saucedo informed Trooper Miller that the trailer was empty at this time. Trooper Miller and Saucedo walked back to Trooper Miller's squad car and the two of them sat in the front seat of the vehicle. Nancy Saucedo-Castillo remained in the tractor cab. Trooper Miller checked Saucedo's Texas driver's licence and discovered that the license was disqualified. Trooper Miller then checked Saucedo's criminal record. He also asked Saucedo if he had a record. Saucedo said that he did. The check confirmed that Saucedo had two prior felony convictions, one for transporting marijuana and one for aggravated assault. Trooper Miller asked Saucedo whether he was carrying any drugs. Saucedo denied having any drugs and told Trooper Miller that he could "open it up."[2] Miller then asked if he could search the trailer and the tractor. Miller testified that Saucedo said "yes". Saucedo's response is

---

[2] The recording admitted into evidence and Government Exhibit 1 does not contain a time stamp on the video to indicate the exact time of the events on the recording. Defendant Saucedo did not object the admission of the recording into evidence or challenge its accuracy.

garbled on the recording.  Miller then reiterated that Saucedo consented to the search of the trailer and the tractor.  Saucedo's response is again garbled on the recording.  Miller testified that Saucedo agreed that Miller could search both the trailer and the tractor.

Trooper Miller removed Saucedo-Castillo from the tractor and seated her in the vehicle of a county deputy who had responded to the scene by that time.  Trooper Miller then began the search of the tractor.  Trooper Miller found a built-in compartment behind the television in the cab near an upper bunk on the driver's side of the tractor.  As part of the search, Trooper Miller removed screws holding the panel in place that covered the compartment.  Trooper Miller found packages of white powder in the compartment that he suspected to be cocaine or methamphetamine.  The packages turned out to be 10 kg of cocaine.

Trooper Miller arrested Saucedo and spoke to him in Trooper Miller's squad car.  Trooper Miller first read Saucedo his Miranda rights in English.  Saucedo confirmed that he understood his rights.  Trooper Miller then starting asking Saucedo about the drugs.  During this conversation, Trooper Miller asked Saucedo where Saucedo thought Trooper Miller found the drugs.  Saucedo said in the compartment behind the television.  Saucedo said that he knew that he was carrying drugs, but did not know

whether the drugs were cocaine or methamphetamine. Trooper Miller asked why he consented to the search. He said that he did not think Trooper Miller would find anything. Saucedo stated that he had been searched twice before and law enforcement did not find the compartment. Saucedo and Trooper Miller spoke in English throughout the incident without any difficulty. Saucedo never complained about the search or restricted the areas to be searched.

## II. ANALYSIS AND CONCLUSIONS OF LAW

Saucedo has filed a Motion to Suppress the stop, the physical evidence seized from the cab of his truck, and any statements allegedly made by him to members of the Illinois State Police at the time of, and subsequent to, his arrest.[3] Saucedo asserts that the evidence that is the subject of his motion was obtained in violation of his rights under the Fourth and Fifth Amendments to the United States Constitution.

The decision to stop an automobile is reasonable when the police have probable cause to believe that a traffic violation has occurred. <u>Whren v. United States</u>, 517 U.S. 806, 810 (1996). Defense counsel briefly argued that the stop was pretextual; however, as long as the trooper had

---

[3]Attorney Jon Noll at the beginning of the suppression hearing stated he was challenging <u>all</u> aspects of the stop, the search, and the questioning of the Defendant.

probable cause to stop the vehicle, his subjective motives are irrelevant. Id. at 813. Moreover, it is well-established that probable cause exists when "the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense." United States v. Cashman, 216 F.3d 582, 586 (7th Cir. 2000).

The record in the instant case supports the conclusion that Trooper Miller had probable cause to believe that a violation of Illinois traffic law had been committed at the time he initiated the traffic stop of Defendant's rig. Trooper Miller testified that he observed the expired trailer plate registration and it was the basis of the stop. The stop of the vehicle did not violate the Fourth Amendment.

The Court now turns to the search of the cab of the tractor-trailer. The Fourth Amendment protects against unreasonable searches and seizures. The Fourth Amendment's prohibition against warrantless searches does not apply when law enforcement officials receive voluntary consent to search. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); United States v. Grap, 403 F.3d 439, 442 (7th Cir. 2005). In Schneckloth, the Supreme Court stated that the question whether a consent to search was in fact voluntary is to be determined from the totality of the circumstances. Id. at 227. The Government bears the burden of proving

by a preponderance of the evidence that the consent was voluntary. United States v. Sandoval-Vasquez, 435 F.3d 739, 744 (7th Cir. 2006). Whether consent is voluntary is a question of fact. Schneckloth, 412 U.S. at 227. Factors that a court must consider in analyzing whether consent was voluntary include:

> (1) the person's age, intelligence, and education; (2) whether he was advised of his constitutional rights; (3) how long he was detained before he gave his consent; (4) whether his consent was immediate, or was prompted by repeated requests by the authorities; (5) whether any physical coercion was used; and (6) whether the individual was in police custody when he gave his consent.

Sandoval-Vasquez, 435 F.3d at 744.

Saucedo's motion asserts that he did not understand English completely and did not realize the nature of the consent he gave.[4] He also argues in his motion that he was impaired because of his diabetic condition. Lastly, Saucedo argues in his motion that he gave Trooper Miller consent to search only that portion of the tractor and trailer that could be seen in plain view and he did not consent to removing panels as Trooper Miller did. Considering all of the relevant factors, the Court believes, based upon the testimony of Trooper Miller and the recordings,

---

[4] DEA Task Force Agent Tim Hansen also testified that he had repeated contact with the Defendant post arrest and that the Defendant spoke in English with him and he had no difficulty understanding the Defendant and communicating with him.

that the Government has proven with clear and convincing evidence that Saucedo voluntarily consented to the search of the entire tractor-trailer without limitation.

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness – what would the typical reasonable person have understood by the exchange between the officer and suspect?" Florida v. Jimeno, 500 U.S. 248, 251 (1991). "[A] suspect may delimit as he chooses the scope of the search to which he consents." Id. at 252. Even after consent has been given, a defendant maintains the ability to limit its scope or withdraw his consent altogether – provided that the withdrawal of consent occurs before any evidence of illegal activity is discovered. United States v. Jachimko, 19 F.3d 296, 299 (7th Cir. 1994). However, it is up to the defendant to effectively communicate his intent to narrow the scope of his consent. United States v. Hardin, 710 F.2d 1231, 1236-37 (7th Cir. 1983).

Saucedo is a 37 year old man who spoke and understood English fluently.[5] The extensive conversations between Saucedo and Miller reflected on the recording show that Saucedo understood English fluently.

---

[5]The Court takes judicial notice from the Defendant Information Sheet (d/e 11) that Saucedo was born on January 19, 1973.

The Court also notes that at Saucedo's initial appearance on January 13, 2010, the Court inquired about Saucedo's ability to understand English and determined that Saucedo understood English and did not need an interpreter at that hearing to assist him in the proceedings. <u>Minute Entry entered January 13, 2010</u>.  The Court made an interpreter available to Saucedo at the October 27, 2010, evidentiary hearing, but the Court observed at the hearing that Saucedo did not need, and did not use, the interpreter's assistance to understand the testimony presented.  Saucedo clearly understood English fluently at the time of the stop and knew that he was consenting to the search of the entire tractor-trailer.

The Court also recognizes that Saucedo is diabetic.  However, the recording and Trooper Miller's testimony demonstrate that Saucedo was suffering no ill effects due to his condition at the time of the traffic stop.  At one point after the search was completed, Saucedo asked to take some medication and Miller allowed him to do so;  however, there is no evidence that Saucedo suffered any effects from his condition that affected his ability to comprehend his situation or to make intelligent decisions.

The evidence shows that Saucedo volunteered his consent and Trooper Miller confirmed with the Defendant that he could search both the tractor and the trailer.   Saucedo did not indicate any limitations on the

scope of his consent.  Saucedo was not subjected to repeated requests for consent.  Trooper Miller and Saucedo discussed the search and Saucedo's consent several other times.   Saucedo never made any indication as to limitations on the scope of his consent.

The Court further notes that there is no evidence of physical coercion and Saucedo was not in police custody at the time he consented to the search;  Trooper Miller was only conducting a traffic stop and a motor carrier inspection.  It is undisputed that Trooper Miller did not advise Saucedo of his right to refuse consent;  however, this is only one factor for the Court's consideration.  Given the evidence set forth above, the Court finds that Saucedo voluntarily consented to Trooper Miller's search of his entire tractor-trailer and that Saucedo did not communicate any limitations on the scope of this consent.

Turning to the request to suppress statements, Saucedo makes a general assertion that the statements were not voluntary.  <u>Motion to Suppress</u>, at 9.  The Court disagrees.  The recording reveals no coercion at all.  Trooper Miller read Saucedo his <u>Miranda</u> rights.  Saucedo acknowledged that he understood his rights.  Thereafter, Saucedo elected to talk with Trooper Miller.  The tone of all of their conversations was civil and polite, even cordial.  The Court finds that Saucedo understood his

rights under Miranda and voluntarily elected to speak with Trooper Miller. His statements were voluntary. To the extent Saucedo seeks to suppress such statements as the fruit of the challenged search, it is recommended that this argument be rejected because, as set forth above, the search in question was a valid consent search and, as such, did not violate Saucedo's Constitutional rights.

## III. CONCLUSION

For all the above reasons, I recommend that Defendant's Motion to Suppress Evidence (d/e 31) be DENIED.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after being served with ECF copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to file a timely objection will constitute a waiver of objections on appeal. See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986); Local Rule 72.2.

ENTER: November 3, 2010

*s/ Byron G. Cudmore*
_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE