# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 10-30010 |
| | ) |
| MARGARITO SAUCEDO, | ) |
| | ) |
| Defendant. | ) |

## OPINION

RICHARD MILLS, United States District Judge:

Margarito Saucedo moves for compassionate release.

## I.    BACKGROUND

Following a jury trial, Defendant Margarito Saucedo

was convicted of one count of Conspiracy to Distribute and

Possess with Intent to Distribute 5 Kilograms or more of

Cocaine, in violation of 21 U.S.C. § 841(b)(1)(A). Based on the offense conduct involving Saucedo and co-Defendant Moses Moreno and other relevant conduct, Saucedo was responsible for distribution of approximately 70.89 kilograms of cocaine between approximately August 2009 and January of 2010.

Saucedo's offense level was determined to be 36, with a criminal history category of III, which yielded a sentencing range of 235 to 293 months imprisonment. On June 20, 2011, Saucedo was sentenced to serve the then-statutory minimum term of 240 months' imprisonment, to be followed by a 10-year term of supervised release. According to the Bureau of Prisons website, Saucedo's projected release date is January 26, 2027.

## II.   COMPASSIONATE RELEASE MOTION

Saucedo, who is a 48-year old man, is serving his sentence at FMC Butner.  He alleges COVID-19 provides an extraordinary and compelling reason for compassionate release.  Saucedo further asserts his health conditions are debilitating, incurable and progressive, which warrant compassionate release on that independent ground.

The Government claims Saucedo has not established extraordinary and compelling circumstances based on his medical condition to justify his early release.  Moreover, a reduction in his sentence is not consistent with the statutory factors under 18 U.S.C. § 3553(a).

In support of his motion for compassionate release, Saucedo states that he suffers from End Stage Renal

Disease (which requires dialysis three days per week for 3.5 hours each session), Diabetes, Hypertension, Gout, Stage 3 Chronic Kidney Disease, Anemia and Asthma. He has suffered six bouts of acute bronchitis in recent years. The motion provides that these conditions place Saucedo at high risk for contracting and having serious complications, including death, from COVID-19. Although Saucedo is fully vaccinated, he states he is immunocompromised due to his End Stage Renal Disease. The CDC has stated, "If you have a condition or are taking medications that weaken your immune system, you may NOT be protected even if you are fully vaccinated. You should continue to take all precautions recommended for unvaccinated people until advised otherwise by your

healthcare provider." www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.  The Defendant notes that that individuals like himself with End Stage Renal Disease have globally weakened immune systems and increased infectious disease risk.  *See* Caroline LaMarche, et al., *Infectious Disease Risk in Dialysis Patients: A Transdisciplinary Approach*, Can. J. of Kidney Health and Dis. (Apr. 29, 2019), www.journals.sagepub.com/doi/full/10.1177/2054358119839080#:.  Recent scientific research has shown that only half of immunocompromised individuals who are fully vaccinated develop antibodies for COVID-19.  *See* Johns Hopkins University, *COVID-19 Vaccines and Immunocompromised People: Fully Vaccinated and Not*

*Protected* (July 14, 2021) https: //www.jhsph.edu/covid-19/articles/covid-19-vaccines-and-immunocompromised-people-fully-vaccinated-and-not-protected.html.    More recently, the CDC published scientific data advocating for additional vaccine doses for immunocompromised people, and specifically identified those with chronic kidney failure or those on dialysis as people who require additional doses to be protected from COVID-19.  *See* Sarah Oliver M.D., MSPH, *Data and Clinical Considerations for Additional Doses in Immunocompromised People* (July 22, 2021),

https://www.cdc.gov/vaccines/acip/meetings/downloads/slides-2021-07/07-COVID-Oliver-508.pdf.

Saucedo states that his health conditions, along with the current pandemic, warrant exercise of the Court's discretion in considering compassionate release. Separately, Saucedo proposes that his health conditions constitute "debilitating illness" that is incurable and progressive, thereby warranting compassionate release.

Saucedo states that his vital organs are already highly compromised by kidney failure and his need for dialysis. He initially suffered from Stage 3 Chronic Kidney Disease beginning in September 2017. It then progressed to Stage 4 Chronic Kidney Disease and, eventually, Stage 5, or End Stage Renal Disease, in January 2020. He has been hospitalized multiple times since then. At the outset of the pandemic, he was counseled by prison staff on his

increased risk of infection due to his chronic medical conditions.

The parties dispute the potential risk Saucedo faces from "permcath placement" relating to his kidney dialysis treatment. The Government states that the risk is of Saucedo's own making and attaches a declaration from BOP Certified Physician Assistant Allison Shaw, who is familiar with his medical condition and treatment, and states:

> At present, inmate Saucedo's life expectancy is more than 18 months. He has end-stage renal disease requiring hemo-dialysis, which is provided adequately here at the institution. Saucedo has refused permanent access placement for his dialysis treatments which is the preferred route for dialysis due to increased risk of infection associated with temporary catheter devices. Despite being hospitalized multiple times for an infection due to his temporary dialysis catheter,

Saucedo still refuses permanent access placement as recommended by the Nephrologist (kidney doctor). This is well documented in the BOP medical records.

In reply, Saucedo states that he refused permanent access placement for valid reasons: (1) he claims he previously suffered for six days during a January 2020 hospitalization, when BOP inappropriately treated him which accelerated the deterioration of his kidney function; (2) he was losing hope at that time; (3) he suffered staph infections of the permcath site on two occasions (in May 2020 and September 2020), each time requiring surgical replacement of the permcath and a relocation from the right to the left side of his chest; (4) proper cleaning and dressing of the permcath site could have prevented these infections; (5) a permanent access port does not improve Saucedo's

prognosis of 5-10 years life expectancy on dialysis; and (6) his prognosis is worsened by hypertension, anemia, and family history of Chronic Kidney Disease.

The Defendant claims his refusal to submit to another surgery is understandable and reasonable and should not be considered as a reason to deny compassionate release. Additionally, he states he would submit to a particular type of permanent access port, that being a fistula, which presents "the best way to establish long-term hemodialysis access," and which involves a shunt in which the vein and artery are sewn together.  Saucedo claims BOP would only give him the graft, in which artificial tubing is implanted to connect a vein and an artery, whereas fistulas last several

years longer and come with fewer complications than grafts.

In March and October of 2020, Saucedo submitted requests to BOP for compassionate release. The requests were based solely on his medical condition. BOP denied the requests upon concluding that Saucedo did not meet the criteria for terminal or debilitated medical conditions and because his life expectancy was indeterminate and he was independent with self-care. Given that Saucedo has been on dialysis for more than one year and dialysis patients have an average life expectancy of 5 to 10 years, *see* www.kidney.org/atoz/content/dialysisinfo#, the Defendant questions whether he will be alive on the day in January 2027 when he is scheduled to be released from BOP

custody.  The Defendant states that, if he obtains a kidney transplant, average life expectancy increases to 8 to 20 years and 12 to 20 years if the donor is a family member.

Saucedo states that he needs a kidney transplant. Kidney transplants are not typically provided to prisoners. He seeks release in order to begin the process of obtaining a kidney transplant.

Additionally, Saucedo notes that the Court may consider that his prior drug conviction would no longer qualify as a serious drug felony to trigger the enhanced penalty structure of 21 U.S.C. § 841(b)(1)(A), under the First Step Act of 2018.  The Seventh Circuit recently determined that the district court's discretion to consider non-retroactive changes in the law "is inherent in the

compassionate release statute and process." *United States v. Black*, 999 F.3d 1071, 1076 (7th Cir. 2021). If the First Step Act's changes to the definition of serious drug felony had been retroactive, Saucedo would have been subject to a mandatory minimum term of imprisonment of ten years, not 20 years as he was in 2011. Saucedo's guideline range of 235 to 293 months imprisonment would not change if he were sentenced today.

## III. DISCUSSION

### (A)

Under the First Step Act, signed into law on December 21, 2018, defendants may file motions for compassionate release after first exhausting administrative remedies within the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). The law

provides the sentencing judge with jurisdiction to consider a defense motion for reduction of sentence based on "extraordinary and compelling" reasons whenever "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]." *See* 18 U.S.C. § 3582(c)(1)(A). If properly invoked by the Government, the exhaustion requirement must be enforced. *See United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021).

Saucedo has met the statutory exhaustion requirement to the extent that he seeks compassionate release based on his medical conditions.

The First Step Act does not say what "extraordinary and compelling reasons" warrant a sentence reduction, but the compassionate release statute directs the Court to consider the sentencing factors of 18 U.S.C. § 3553(a) when deciding compassionate release motions. *See* 18 U.S.C. § 3582(c)(1)(A).

Because the Sentencing Guideline policy statement has not been updated since passage of the First Step Act to reflect that defendants (and not only the BOP) may move for compassionate release, there is no "applicable" policy statement concerning the expanded compassionate-release

provision.  *See United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).  "The statute itself sets the standard: only 'extraordinary and compelling reasons' justify the release of a prisoner who is outside the scope of § 3582(c)(1)(A)(ii)."  *Id*.  Until U.S.S.G. § 1B1.13 is amended, there is not an "applicable" policy statement for courts to rely on in considering prisoner-initiated applications for compassionate release.  *See id*. at 1181.  The Court also is not bound by BOP's Compassionate Release/Reduction in Sentence Procedures under Section 571.61(3), which limits BOP's reduction in sentence consideration to "inmates who have been diagnosed with a terminal, incurable disease whose life expectancy is eighteen (18) months or less, and/or has a disease or

condition with an end-of-life trajectory under 18 U.S.C. § 3582(d)(1)."

The Seventh Circuit recently determined that the district court's discretion to consider non-retroactive changes in the law "is inherent in the compassionate release statute and process."  *United States v. Black*, 999 F.3d 1071, 1076 (7th Cir. 2021).

In *Black*, the court considered the First Step Act's non-retroactive changes to 18 U.S.C. § 924(c) and what it meant for district courts considering motions for compassionate release.  The court explained:

> Congress's policy choice not to make the change to § 924(c) categorically retroactive does not imply that district courts may not consider those legislative changes when deciding individual motions for

compassionate release like this one.  To the contrary, the purpose of compassionate release under § 3582 is to allow for sentencing reductions when there is no statute affording such a reduction but where extraordinary and compelling reasons justify the relief.

*Id*. at 1075.

The Seventh Circuit concluded that because the district court did not consider a statutory change that "reflects a substantially different view by Congress about how to punish violations of § 924(c)," it was not apparent that the district court recognized the full extent of its discretion in considering the defendant's compassionate release motion.  *See Black*, 999 F.3d at 1076.

More recently, the Seventh Circuit determined that the change to § 924(c) cannot alone "constitute an

extraordinary and compelling reason for a sentence reduction."  *United States v. Thacker*, 2021 WL 2979530, at *6 (7th Cir. July 15, 2021).  The court explained:

> The proper analysis when evaluating a motion for a discretionary sentencing reduction under § 3582(c)(1)(A) based on "extraordinary and compelling" reasons proceeds in two steps.  At step one, the prisoner must identify an "extraordinary and compelling" reason warranting a sentence reduction, but that reason cannot include, whether alone or in combination with other factors, consideration of the First Step Act's amendment to § 924(c).  Upon a finding that the prisoner has supplied such a reason, the second step of the analysis requires the district court, in exercising the discretion conferred by the compassionate release statute, to consider any applicable sentencing factors in § 3553(a) as part of determining what sentencing reduction to award the prisoner.
>
> *Id.*

Pursuant to *Black* and *Thacker*, if the Defendant provides an extraordinary and compelling reason warranting a sentence reduction, the statutory change can be considered in conjunction with the statutory factors considered by the Court in determining whether a reduction is warranted.

(B)

The Court concludes that Defendant's End Stage Renal Disease along with other medical conditions provide extraordinary and compelling reasons for his immediate release. If Saucedo has been on dialysis for approximately 18 months, he would have an average life expectancy of 3.5 to 8.5 years, based on the 5 to 10 year life expectancy for individuals on dialysis. The Defendant has presented

evidence that a kidney transplant could extend that average life expectancy.  It is extremely unlikely that he could receive a kidney transplant while in BOP custody.  If, per BOP policy, compassionate release were granted only when it is determined that Defendant's life expectancy is 18 months or less, it may well be too late for Saucedo, given the amount of time it would take to find an appropriate match.

It also appears that unlike most fully vaccinated individuals, because of Saucedo's immunocompromised status, COVID-19 continues to be a potential serious risk to him.  *See United States v. Broadfield*, 2021 WL 3076863, at *2 (7th Cir. July 21, 2021) (stating that "for the vast majority of prisoners, the availability of a vaccine

makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release").  However, a prisoner who shows that he unable to receive or benefit from the vaccine may still rely on the compassionate release statute.  *See id*.  The Defendant has presented guidance from the CDC and other sources which suggest that the vaccine may not protect him as an immunocompromised individual.  However, there currently is not a major COVID-19 problem at Butner FMC, with no inmates and only one staff member who is currently positive for COVID-19.  *See* www.bop.gov/coronavirus (last checked July 28, 2021).

Having determined that the Defendant has established extraordinary and compelling reasons for a sentence

reduction, the Court now turns to the applicable sentencing factors.

The Defendant was convicted of conspiracy to distribute a large amount of cocaine. Saucedo did not accept responsibility and instead went to trial. He had a significant criminal history which included convictions for theft, possession of marijuana and aggravated assault. He committed the federal offense while on supervision for his Texas state law possession of marijuana conviction.

The then-minimum sentence of 240 months did reflect the seriousness of the offense, promote respect for the law and provide just punishment. A sentence of 120 months is now at least under some circumstances minimally sufficient to achieve those same objectives. The Defendant

has served approximately 138 months.   As previously noted, there would have been no resulting change to the Defendant's guideline range.  If he were healthy and before the Court today, Saucedo would likely receive the same or a similar sentence upon conviction following a jury trial.  It is also possible he would opt to plead guilty with the lower statutory minimum in the hope of receiving a sentence at or near the mandatory minimum.

Deterrence is another important consideration.  The Compassionate Release Memorandum provides that, according to BOP's inmate history, Saucedo's recidivism risk level is low.  Whether the recidivism risk level is due to Saucedo's medical concerns or some other reason, the sentence appears to have achieved the desired effect when

it comes to deterrence.   To the extent that general deterrence is a concern, Saucedo has been in custody for more than 11.5 years, which would indicate to the general public that anyone violating the law like Saucedo would receive a serious punishment.   This factor supports granting compassionate release.

Another factor to consider is protecting the public from further crimes of the Defendant.  Based on Saucedo's low recidivism risk, this factor supports granting compassionate release.  The Defendant will also serve a lengthy supervised release term, which provides an added measure of protection against recidivism.

Another consideration involves providing a defendant with needed educational or vocational training, medical

care, or other correctional treatment in an effective manner.
The Compassionate Release Memorandum provides that
Saucedo has completed 35 educational courses, which
include several vocational programs.   It is probably
doubtful he can get any further benefit from such training.
Additionally, while the Defendant receives quality medical
care at FMC Butner, that would not be a legitimate reason
to order him to remain in prison if the Court were to
otherwise find that compassionate release should be
granted. *See e.g.*, *Tapia v. United States*, 564 U.S. 319, 335
("[A] court may not impose or lengthen a prison sentence
to enable an offender to complete a treatment program or
otherwise to promote rehabilitation.").

Another sentencing factor is to avoid unwarranted sentence disparities among similarly situated defendants. The Court earlier stated that Defendant would receive the same or a similar sentence if he were sentenced today and the record was the same as it was in 2011.  Of course, the circumstances have changed due to Saucedo's medical considerations.

The Defendant has four disciplinary infractions during his more than a decade in BOP custody.  It does not appear that any are particularly serious.  He was twice reported for phone abuse, once for being in an unauthorized area and once for "fraud/deceit of skills" test.

The Court finds that the most important sentencing factors—deterrence, providing just punishment and

protection of the public—support granting compassionate release.

## IV.  CONCLUSION

The Defendant's End Stage Renal Disease and need for a kidney transplant provide extraordinary and compelling circumstances to grant compassionate release. If he were to serve the remainder of his sentence or until BOP determines that his lifespan is 18 months, it is possible, if not likely, that it would be too late for a kidney transplant.  Upon considering the applicable sentencing factors and the fact that Defendant has served 18 months more than the statutory minimum under current law, the Court concludes that compassionate release is warranted.

<u>Ergo</u>, the Defendant's Amended Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) and The CARES Act [d/e 118] is GRANTED.

The Clerk will terminate the Defendant's pro se motion [d/e 114] .

The Court hereby reduces Defendant's term of imprisonment from 240 months to time served plus 72 hours in order to allow the Defendant to arrange transportation.

All other aspects of Defendant's sentence shall remain the same.

The Clerk will send copies of this Order to the United States Probation Office and to FMC Butner.

ENTER: July 30, 2021

FOR THE COURT:

/s/ *Richard Mills*
Richard Mills
United States District Judge